UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:  

DENA LEE MCGOW
Debtors,

SPRINGLEAF FINANCIAL SERVICES, INC.,
Movant,

DENA LEE MCGOW,
WAYNE PAULSEN, a Non-Bankruptcy Co-Debtor, and
Sally Zeman,
the Chapter 13 Trustee,
Respondents.

Bankruptcy No. 11-39848-MER
Chapter 13

## MOTION FOR RELIEF FROM AUTOMATIC STAY

SPRINGLEAF FINANCIAL SERVICES, INC., formerly known as, American General Financial Services, Inc. dba American General Financial Services (DE), Inc., its predecessors, successors and assigns (hereinafter "Creditor"), through its attorneys, HELLERSTEIN AND SHORE, P.C., respectfully represents:

1. The Debtor, Dena Lee McGow ("Debtor"), and non-bankruptcy co-debtor, Wayne Paulsen ("Co-debtor"), are indebted to Creditor pursuant to a Loan Agreement and Disclosure Statement ("Loan Agreement") under which Creditor claims a valid lien and security interest in the following described property (hereinafter "Property"):

    1996 South Wind RV Motorhome (1GBLP37N6S3329027)

2. Movant has confirmed that the Debtor and Co-debtor are not on active military duty, in accordance with this Court's General Procedure Order 2005-2 (see affidavit attached hereto).

3. Notice of Creditor's lien and security interest was given by notation on the Property's Certificate of Title. Copies of the Loan Agreement and Certificate of Title are attached hereto. Creditor is the current owner of the Loan Agreement and the lien and security interest granted thereby.

4. The Loan Agreement is currently in default for failure to pay monthly payments due after July, 2012. At copy of the recent trasaction history showing the last payment received on July 3, 2012 is attached hereto.

5. Enforcement of Creditor's lien and security interest has been stayed by operation of 11 U.S.C. §§ 362(a) and 1301(a).

6. The approximate amount due Creditory under the Loan Agreement, with interest accruing on the outstanding principal balance at 13.10% per year, is itemized as follows:

| | |
|---|---|
| Principal | $ 16,720.82 |
| Interest | $    669.69 |
| Late Fees | $      30.00 |
| Attorney fees and costs | $    526.00 |
| | |
| Total Debt Owed | $17,946.51 |

7.  Pursuant to NADA Guides, the Property has a low retail value of $11,840.00 and an average retail value of $14,589.00. The amount of Creditor's secured claim is $17,946.51, which is more than the value of the Property. As a result, there is no equity in the Property an no equity cushion that could provide Creditor with adequate protection. Since the Debtor has filed a case under Chapter 13, and the Property is of a recreational nature, the Property is not necessary to an effective reorganization of the Debtor. Accordingly, Creditor is entitled to relief from stay pursuant to 11 U.S.C. § 362(d)(1) and (2).

8.  Debtor's plan does not propose to pay Creditor's secured claim. Accordingly, Creditor is entitled to relief from stay as to the Co-debtor's interest pursuant to 11 U.S.C. §1301(c)(2).

9.  The Creditor further requests that the requirements of Fed. R. B. P. 4001(a)(3) be waived so that the Creditor may immediately enforce and implement an order granting relief from stay.

WHEREFORE, Creditor requests entry of an Order granting to the Creditor relief from the automatic stay provided by operation of 11 U.S.C. §§ 362(a) and 1301(a) in order to proceed, as to Debtor, in rem against the Property, and to proceed, as to the Co-debtor, with any lawful action against the Co-debtor, and for such other relief to which the Creditor is entitled under the circumstances.

Dated: October 23, 2012

HELLERSTEIN AND SHORE, P.C.

/s/ David A. Shore
David A. Shore, #19973
Attorneys for Movant
5347 S. Valentia Way, Suite 100
Greenwood Village, CO 80111
(303) 573-1080
(303) 571-1271 (facsimile)

File No. 7501.045

In re:
DENA LEE MCGOW

Case No. 11-39848-MER

## AFFIDAVIT PURSUANT TO THE SERVICEMEMBER CIVIL RELIEF ACT OF 2003

I, Kandice L. Torno, being of lawful age, first duly sworn, hereby state as follows:

I am over the age of 18 and am an employee of Hellerstein and Shore, P.C..

1. On October 23, 2012, I, Kandice L. Torno, performed a search on the Department of Defense Manpower Data Center. Upon searching the information data banks of the Department of Defense Manpower Data Center (DMDC), the DMDC does not possess any information indicating that the debtor, Dena Lee McGow and non-bankruptcy co-debtor Wayne Paulsen, are currently on active duty as to all branches of the Military.

Dated: October 23, 2012

*Original signature on file*
By: _____

The foregoing was subscribed and sworn to before me on this _____ day of October 23, 2012
WITNESS MY HAND AND OFFICIAL SEAL.
My Commission expires: _____

CAROL F. TEW
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires 09/20/2015

*Original signature on file*
_____
NOTARY PUBLIC

File No. 7501.045

## LOAN AGREEMENT AND DISCLOSURE STATEMENT

**AMERICAN GENERAL FINANCIAL SERVICES**

| DATE 11/17/07 | ACCOUNT NUMBER ▓▓▓3288 | TYPE OF LOAN (Alpha) F00 |
|---|---|---|
| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | LENDER'S TELEPHONE NUMBER 303-427-4414 | |

AMERICAN GENERAL FINANCIAL SERVICES (DE), INC.
5078 W 92ND AVE
WESTMINSTER, CO 80031-6302

**BORROWER(S) NAME AND ADDRESS ("I","We")**

DENA L MCGOW
WAYNE PAULSEN
8624 WILLOW ST
COMMERCE CITY, CO 80022

I will read this entire Loan Agreement and Disclosure Statement ("Agreement") and all related documents carefully. If I have any questions, I will ask them before I sign any of these documents. By signing, I am indicating my agreement to the statements, promises, terms, and conditions contained in the documents I sign.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 13.16 % | $ 17811.64 | $ 27129.94 | $ 44941.58 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 584.63 | 01/01/08 |
| 99 | $ 448.05 | monthly beginning 02/01/08 |

**LATE CHARGE:** ☐ If any payment is not paid in full within ____ days after its due date, I will be charged ____% of the ____ amount of the payment, but not more than $ ____ or less than $ ____.

☒ If any payment is not paid in full within __10__ days after its due date, I will be charged $ __15.00__ if the entire scheduled payment exceeds $ __0__ or $ __N/A__ if the entire scheduled payment is $ __0__ or less.

**PREPAYMENT:** If I pay off early:
☐ I may ☒ I will not have to pay a penalty or minimum charge.
☐ I may ☒ I will not get a refund or credit of part of the finance charge.

**SECURITY:** I am giving Lender a security interest in:

☐ Real estate located at:

☒ Motor Vehicles

| Year | Make | Model | Vehicle Identification No. |
|---|---|---|---|
| 1996 | SOUTHWIND | 33 RV | 1GBLP37N6S3329027 |

☐ Other Assets — Other Assets Description

☐ Household items described on the Personal Property Appraisal Form, which I have signed and which has been delivered to me with this Agreement.

**ASSUMPTION:** Someone buying my home, if it secures this loan, may not assume the remainder of this loan on the original terms unless approved by Lender.

☐ My loan contains a variable-rate feature. Disclosures about the variable-rate feature have been provided to me earlier.

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

**THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.**

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

_NSW_   _Dena L. McGow_
         Borrower

         _Wayne Paulsen_
         Co-Borrower

**SEE REVERSE SIDE FOR ADDITIONAL DISCLOSURES**

UNAA91 (01-16-06) Agreement (1-2)   Page 1

## ITEMIZATION OF AMOUNT FINANCED

Amounts paid to others on my behalf

| # | Amount | Description | Paid To |
|---|--------|-------------|---------|
| 1. | $ 2352.26 | Joint Life Premium | PAID TO LIFE INSURANCE COMPANY * |
| 2. | $ 3593.36 | Joint Disability Premium | PAID TO DISABILITY INSURANCE COMPANY * |
| 3. | $ NONE | | PAID TO |
| 4. | $ NONE | | PAID TO |
| 5. | $ NONE | | PAID TO |
| 6. | $ NONE | | PAID TO |
| 7. | $ NONE | | PAID TO |
| 8. | $ NONE | | PAID TO |
| 9. | $ NONE | | PAID TO |
| 10. | $ NONE | | PAID TO |
| 11. | $ NONE | | PAID TO |
| 12. | $ 12.20 | MV Certificate of Title Fee | PAID TO GOVERNMENT AGENCY |
| 13. | $ NONE | | PAID TO |
| 14. | $ NONE | | PAID TO |
| 15. | $ NONE | | PAID TO |
| 16. | $ NONE | | PAID TO |
| 17. | $ NONE | | PAID TO |
| 18. | $ NONE | | PAID TO |
| 19. | $ NONE | | PAID TO |
| 20. | $ NONE | | |
| 21. | $ | | PAID TO |
| 22. | $ | | PAID TO |
| 23. | $ | | PAID TO |
| 24. | $ | | PAID TO |
| 25. | $ | | PAID TO |
| 26. | $ | | PAID TO |
| 27. | $ | | PAID TO |
| 28. | $ | | PAID TO |
| 29. | $ | | PAID TO |
| 30. | $ | | PAID TO |
| 31. | $ | | PAID TO |
| 32. | $ | | PAID TO |
| 33. | $ | | PAID TO |
| 34. | $ | | PAID TO |
| 35. | $ | | PAID TO |
| 36. | $ | | PAID TO |
| 37. | $ | | PAID TO |
| 38. | $ | | PAID TO |
| 39. | $ | | PAID TO |
| 40. | $ | | PAID TO |
| 41. | $ | | PAID TO |
| 42. | $ | | PAID TO |
| 43. | $ | | PAID TO |
| 44. | $ | | PAID TO |
| 45. | $ | | PAID TO |

Amount Paid on Prior Account with Lender

46. $ 20057.91

Amounts Paid to me

| # | Amount | Paid To |
|---|--------|---------|
| 47. | $ 1114.21 | PAID TO DENA MCGOW & WAYNE PAULSEN |
| 48. | $ | PAID TO |
| 49. | $ | PAID TO |
| 50. | $ | PAID TO |
| 51. | $ | PAID TO |
| 52. | $ | PAID TO |
| 53. | $ | PAID TO |
| 54. | $ | PAID TO |
| 55. | $ | PAID TO |
| 56. | $ | PAID TO |

\* Lender may retain a portion of these amounts.

$ __27129.94__ Amount Financed (Sum of lines 1 - 56)

$ __55.00__ Prepaid Finance Charges (itemized below)

### PREPAID FINANCE CHARGES

| # | Amount | Description | Paid To |
|---|--------|-------------|---------|
| 1. | $ 55.00 | Points | PAID TO LENDER |
| 2. | $ NONE | | PAID TO |
| 3. | $ NONE | | PAID TO |
| 4. | $ NONE | | PAID TO |
| 5. | $ NONE | | PAID TO |
| 6. | $ NONE | | PAID TO |
| 7. | $ NONE | | PAID TO |
| 8. | $ NONE | | PAID TO |
| 9. | $ NONE | | PAID TO |
| 10. | $ NONE | | PAID TO |
| 11. | $ NONE | | PAID TO |
| 12. | $ NONE | | PAID TO |
| 13. | $ NONE | | PAID TO |
| 14. | $ NONE | | PAID TO |
| 15. | $ NONE | | |

SEE NEXT PAGE FOR IMPORTANT INFORMATION     Initials: DM  WP

## ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person--the arbitrator--instead of a judge or jury, to resolve the dispute. TO THE FULLEST EXTENT PERMITTED BY LAW, BY SIGNING THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT ("this Arbitration Agreement").

**CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us ("Covered Claims"). This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

My loan from Lender today; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

**COVERED CLAIMS AGAINST THIRD PARTIES.** This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of its affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender, any third parties that assigned Retail Contracts or other agreements to Lender; and any of the employees, officers, agents, or directors of such affiliates or third parties. Affiliate corporations are Lender's parent corporations, subsidiary corporations, and sister corporations. Some of Lender's affiliates are American General Finance Corporation, American General Financial Services, Inc., Merit Life Insurance Co., and Yosemite Insurance Company. In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party, all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Agreement, provided that the third party is required to agree to resolve such claims by arbitration.

**MATTERS NOT COVERED BY ARBITRATION.** I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin, or foreclosure, but instead may proceed in court for those judicial remedies (an "Excluded Collateral Lawsuit"). I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counter claim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover an amount which does not exceed the total sum of $5,000.00 (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit"). If an Excluded Damages Lawsuit is filed, the other party cannot require that the claims in that lawsuit be arbitrated. An Excluded Damages Lawsuit can be brought to recover money for myself or Lender only, not for any class or group of persons having similar claims. If such an Excluded Damages Lawsuit is filed by me or Lender, and any party to that lawsuit files an amendment, counterclaim, cross-claim, or third-party claim seeking to recover more than $5,000, then that claim, counterclaim, cross-claim, or third party claim must be arbitrated in accordance with the procedures set forth in this Arbitration Agreement. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin, or foreclosure or by having filed any claims in court seeking to recover a total sum of $5,000.00 or less.

### ARBITRATION RULES AND PROCEDURES.

**A. ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the rules and procedures of the National Arbitration Forum ("NAF") that are in effect at the time arbitration is started and under the rules set forth in this Arbitration Agreement. At my request, Lender will provide me a copy of the NAF Rules. If I lose my copy, Lender will give me another one if I ask for it. I may also obtain a copy of those rules by calling NAF at 1-800-474-2371 or by reviewing NAF's web-site at www.arb-forum.com. In the event that NAF is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the NAF for good cause, then Lender and I agree to submit all disputes to the American Arbitration Association ("AAA") for proceedings conducted pursuant to the AAA's Commercial Rules and Expedited Procedures. If there is a conflict between the rules of the NAF (or the AAA) and this Arbitration Agreement, this Arbitration Agreement will govern.

**B. SELECTION OF ARBITRATOR.** NAF maintains lists of approved arbitrators. NAF will provide Lender and me each a list of seven (7) possible arbitrators. Lender and I will each have an opportunity to strike three (3) persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator.

**C. STARTING ARBITRATION.** Before I start arbitration, I agree to write to Lender at the address shown for Lender in this Agreement, unless I have received notice of a new address for Lender, and I agree to give Lender a reasonable opportunity to respond and resolve any errors. In my letter, I will give the following information: my name and account number, a description of my claim or dispute and why I believe Lender has made an error, the dollar amount of my claim or dispute, and a description of any other information I need from Lender. Before Lender starts an arbitration, it must write to me at my billing address; describe its claim or dispute; state the dollar amount of its claim or dispute; and give me a reasonable opportunity to resolve the claim or dispute. If a Covered Claim cannot be resolved in the foregoing manner, either Lender or I can start arbitration. Except as described in Paragraph E below, nothing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations. To start an arbitration, Lender and I agree to follow the rules of the NAF (or, if applicable, the rules of the AAA).

**D. COSTS OF ARBITRATION.** The NAF and AAA charge certain fees in connection with arbitration proceedings they conduct. I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost. Lender will also bear any costs Lender is required to bear by law or the terms of any other agreement with me. Each party will also pay for its own costs, including fees for attorneys, experts, and witnesses, unless otherwise provided by law or by the terms of any other agreement between the parties, to the extent permitted by applicable law.

**E. CONDUCT OF PROCEEDINGS.** In conducting the arbitration proceedings, the arbitrator shall be bound by the Federal Rules of Evidence; however, the federal or any state rules of procedure or discovery shall not bind the arbitrator. The arbitrator's findings, reasoning, decision, and award shall be set forth in writing and shall be based upon and be consistent with the law of the jurisdiction that applies to the loan or other agreement between Lender and me. The arbitrator must abide by all applicable laws protecting the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges.

SEE REVERSE SIDE FOR ADDITIONAL ARBITRATION TERMS

ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL (con'd)

F. **ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims involving more than $100,000, any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the NAF or AAA, as the case may be. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision, and award shall be subject to judicial review on the grounds set forth in 9 U.S.C. § 10, as well as on the grounds that the findings, decision, and award are manifestly inconsistent with the terms of this Arbitration Agreement and any applicable laws or rules.

G. **LIMITATION OF PROCEEDINGS.** Lender and I further agree that the arbitrator will be restricted to resolving only the claims, disputes, or controversies between Lender and me and the other parties covered by this particular Agreement (and not by similar agreements). Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands of other persons. I agree not to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim.

H. **LIMITATION OF ARBITRATOR'S AUTHORITY:** The arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages. In awarding any punitive damages, the arbitrator must abide by all applicable state and federal laws regarding the amount of such damages, and the arbitrator must state the precise amount of the punitive damages award. The arbitrator must also conduct a post-award review of any punitive damages, allowing the parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the arbitration is conducted. The arbitrator may award injunctive relief that would benefit either Lender or me in connection with resolving a Covered Claim between Lender and me, but the arbitrator may not award injunctive relief for the benefit of other persons or groups of persons who are not named parties to the arbitration proceeding.

I. **LOCATION OF THE ARBITRATION.** The arbitration will take place in the county where I live unless Lender and I agree to another location. If Lender and I agree, all or a portion of the arbitration proceedings can be conducted by telephone conference.

J. **ENFORCEMENT IN COURT.** Nothing in this Arbitration Agreement shall prevent either Lender or me from enforcing all rights under this Arbitration Agreement if a Covered Claim is filed in court.

K. **FORUM SELECTION CLAUSE.** If either Lender or I need to file a lawsuit to enforce this Arbitration Agreement or to pursue claims that either may or may not be arbitratable under this Arbitration Agreement, the exclusive venue for that suit will be a state court located in the county where Lender's office is located or where I sign this Agreement, or in the federal court covering that county, unless the governing law requires suit to be filed in another location. Nothing in this paragraph shall prevent either Lender or me from enforcing its or my rights under this Arbitration Agreement if the Covered Claim is filed in court.

**ADDITIONAL INFORMATION.** I may obtain additional information about arbitration by contacting the National Arbitration Forum, Inc., at P.O. Box 50191, Minneapolis, Minnesota 55405. (800-474-2371 (Telephone)). (651-631-0802 (Fax)). www.arb-forum.com (e-mail).

**OTHER IMPORTANT AGREEMENTS.** Lender and I agree:

(a) This Arbitration Agreement does not affect any statute of limitations or claims of privilege recognized at law.
(b) The loan and insurance transactions between Lender and me and other applicable parties are transactions involving interstate commerce, using funds and other resources from outside the state.
(c) The Federal Arbitration Act applies to and governs this Agreement. State arbitration laws and procedures shall not apply to this Agreement.
(d) This Agreement applies to and runs to the benefit of Lender's and my assigns, successors, executors, heirs, and/or representatives.
(e) If any term of this Arbitration Agreement is unenforceable, the remaining terms are severable and enforceable to the fullest extent permitted by law.
(f) This Arbitration Agreement supersedes any prior arbitration agreement that may exist between Lender and me and can only be modified in writing signed by the parties.
(g) This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged off, or discharged or modified in bankruptcy.

I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.

SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION

**DATE OF LOAN CHARGE.** 17/07 (the date the finance charge is scheduled to begin to accrue).

**CONTRACT RATE.** 13.10 % per year, which is the agreed interest rate. If the "Adjustable Rate Loan" box is checked below, this rate is subject to change as set forth therein.

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the Truth in Lending Disclosure on page 1 of this Agreement, and with all other terms of this Agreement. If the "Adjustable Rate Loan" box is checked below, the payment amounts set forth in the Payment Schedule may change as set forth in this Agreement.

☐ **ADJUSTABLE RATE LOAN.** If this box is checked, I agree that the agreed interest rate I will pay may change on the Due Date of my _____ payment and on that same date every _____ thereafter ("the Change Date"). If there is no corresponding date in any given month, the Change Date will be the last day of the month. (For example, if my rate can change quarterly and my Change Date is January 31, my next Change Date will be April 30.) My interest rate will be based on an index plus a margin. The index is the highest Prime Rate published in The Wall Street Journal's "Money Rates" table. If this index should no longer be available, Lender will choose a comparable replacement index and will inform me of the new index. The Contract Rate and the monthly payment amounts may change as set forth herein.

Prior to each Change Date, Lender will calculate the new agreed interest rate by taking the index as of 60 days prior to the Change Date and adding a margin of _____ percentage points. Lender will round the resulting figure down to the next lowest one-hundredth of one percent. Lender will then determine the new monthly payment amount necessary to repay my loan in full on the due date for the final payment.

My interest rate will never increase or decrease on any single Change Date by more than _____ percentage points from the agreed rate of interest in effect immediately preceding the Change Date. Any rate change not implemented as a result of this limitation may be carried over to the next Change Date. My interest rate will never increase by more than eight percentage points (for first mortgage loans) or ten percentage points (for subordinate mortgage loans) over the initial Prime Rate, and in no event will ever be greater than _____ %, and will never be less than _____ %.

The new agreed interest rate will be effective as of the Change Date. The new monthly payment will be effective as of the next regularly scheduled due date subsequent to the Change Date. Lender will send me notice of all rate and payment changes as required by law.

**SECURITY AGREEMENT.** If any type of personal property (property other than real estate ("real property")) is disclosed in the "Security" section of the Truth in Lending Disclosures, to secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I grant Lender a security interest under the Uniform Commercial Code or other applicable law in: (1) the property identified in the "Security" disclosure of the Truth in Lending Disclosures on page 1 of this Agreement; (2) any substitutions or replacements of that property; and (3) the proceeds and products of that property (collectively referred to as the "Collateral"). I also grant Lender a security interest in any unearned premiums from any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance). Lender's security interest shall remain in effect until I have paid in full all amounts due under this Agreement and subject to any modifications, renewals, extensions, and future advances thereof. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement when appropriate. If real property is disclosed in the "Security" section of the Truth in Lending Disclosures, I am signing a mortgage or deed of trust covering the real property at the same time that I am signing this Agreement.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that they are jointly and severally liable and that Lender may enforce this Agreement against all or any of them, but not in a combined amount exceeding the amount due.

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Maker if this Agreement is in default. Unless required by law, Lender will not notify me if: (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Maker(s).

**CREDIT INFORMATION.** I authorize Lender to investigate my creditworthiness, including to obtain my credit report at anytime, as permitted by law.

**REQUIRED PROPERTY INSURANCE.** I agree to insure any automobiles, all terrain vehicles, snowmobiles, watercraft, other titled vehicles, large equipment, and dwellings and other structures attached to real property ("Property"), in which I have granted Lender an interest to secure my loan, against all risks of physical damage, including loss by fire and other hazards, for the term of the loan, in amounts and with deductibles approved by Lender ("Required Insurance"). Required Insurance must: (1) be issued by an insurer and have terms and conditions satisfactory to Lender; (2) name Lender as loss payee or mortgagee; (3) not permit the addition of any other loss payee or mortgagee to the insurance policy unless Lender consents in writing; (4) provide that such insurance will not be cancelled or modified without at least 15 days prior written notice to the loss payee or mortgagee; and (5) not include any disclaimer of the insurer's liability for failure to give such notice. I may purchase Required Insurance from whomever is acceptable to Lender or provide existing coverage through any insurance company or agent of my choice that is acceptable to Lender. Lender does not sell Required Insurance. I agree to provide to Lender satisfactory proof of Required Insurance. I agree to keep Required Insurance in force until all amounts I owe Lender under this Agreement are paid in full. In the event of damage to or loss of the Property, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may, but is not required to, do so on my behalf. I agree Lender may use any insurance proceeds to reduce any amounts I owe under this Agreement. To the extent permitted by law, I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds paid to Lender do not pay off all amounts I owe Lender under this Agreement, I remain responsible for payment of the balance of any amounts due under this Agreement.

**LENDER PLACED INSURANCE.** If at any time I fail to buy or keep in force Required Insurance, Lender may, but is not required to, purchase Required Insurance at my expense to protect Lender's interest in the Property. I agree that Required Insurance may, but to the extent permitted by law, need not, protect my interests. The coverage purchased by Lender may not pay any claim I make. I agree that the cost of Required Insurance purchased by Lender may be much more than the cost of Required Insurance I could have obtained on my own, and I agree that the cost of such Required Insurance may, to the extent permitted by law, be added to my loan balance and accrue interest at the Contract Rate. I authorize Lender to release to third parties any information necessary to monitor the status of Required Insurance on my Property and to purchase Required Insurance required by this Agreement.

**VOLUNTARY CREDIT INSURANCE.** Lender's affiliate may provide the credit insurance that I voluntarily select. Lender and/or its affiliates expect to profit from my purchase of voluntary credit and personal property insurance and I consent to this. The terms "credit insurance" and "credit life insurance" include debtor group life insurance, where offered.

**ASSIGNMENT OF UNEARNED INSURANCE PREMIUMS AND POLICY PROCEEDS.** I, where authorized by law, hereby assign to Lender any moneys, not in excess of the unpaid balance of indebtedness which this instrument secures, which may become payable under any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance), including return of unearned premiums, and direct any insurance company to make payment directly to Lender to be applied to said unpaid indebtedness and I hereby appoint Lender as my attorney-in-fact to endorse any draft, check or other papers necessary to obtain such insurance payments.

**CORRECTION; RELEASE.** During the term of this Agreement, I agree to cooperate with Lender to: (a) correct any clerical errors that were made in connection with loan documents; (b) obtain the correct amounts due to others; and (c) release all liens upon payment in full. Lender may consider any breach of this requirement as an event of default of this Agreement.

**CANCELLATION.** Prior to the distribution of loan proceeds, Lender may withdraw its approval of or commitment to make this loan if Lender reasonably believes that: (a) there are material omissions or misrepresentations in connection with my credit application; (b) there is a material, adverse change in my creditworthiness; (c) there are additional liens on the right, title, or interest of any Collateral to be used for this loan; or (d) a sale or transfer of any right, title, or interest in any Collateral to be used for this loan has or will occur that is not agreed to by Lender.

**SEVERABILITY.** The fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any party without the express written consent of Lender.

SEE REVERSE SIDE FOR ADDITIONAL INFORMATION

UNATG1 (10-14-07) Agreement (5-6)     Page 5     Initials _____ _____

DEFAULT. Except as prohibited by law or as limited by other provisions of this Agreement, I will be in default of this Agreement if any one of the following occurs:
  A. I fail to make any payment under this Agreement when due.
  B. I fail to do anything else I have agreed to do in this Agreement.
  C. Any statement or representation I made in my credit application is untrue or incorrect.
  D. I fail to provide Lender with proof of employment, residence, insurance, or repair to credit history within three (3) business days after Lender's written request for this information.
  E. I die, become incompetent, generally fail to pay my debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.
  F. Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.
  G. Any police or governmental agency seizes or impounds the Collateral, if the Collateral consists of personal property, or starts forfeiture proceedings against the Collateral.
  H. If the Collateral consists of personal property, I relocate to another state without giving written notice at least 30 days before relocating.
  I. I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.
  J. Any other event or circumstance occurs that reasonably causes Lender to deem itself insecure or to believe that Lender's prospects for payment or realization upon the Collateral are impaired, unless prohibited by state law.

(For Kansas residents only, Lender believes the preceding events would significantly impair the prospect of payment, performance, or realization of Collateral. Except for a default resulting from my failure to make any payment as required by this Agreement, the burden of establishing the prospect of such significant impairment is on the Lender.)

GENERAL REMEDIES. If I am in default on this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions, all of the remedies permitted by law and this Agreement, including:
  A. Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the Amount Financed, finance charges, and all other agreed charges. These amounts will accrue finance charges from the date I am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.
  B. Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not required to do so. Upon payment by Lender, these amounts will be due immediately and will accrue finance charges from the date paid at the Contract Rate until repaid in full to Lender.
  C. If the Collateral consists of personal property, Lender may require me to make the Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and me.
  D. If the Collateral consists of personal property, Lender may immediately immobilize, disable, or take possession of the Collateral by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses.
  E. Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover what I owe Lender, and Lender may sue me for those additional amounts.
  F. If the Collateral consists of real property, Lender may begin foreclosure proceedings as described in the mortgage or deed of trust granting Lender a security interest in the Collateral.
  G. Lender has the right, but not the obligation, to cancel or request termination of any voluntary credit or personal property insurance in the event of default and I hereby appoint Lender as my attorney-in-fact to cancel any such insurance in the event of default, subject to any applicable restrictions under state law. Return of any unearned premium as a result of such request for termination or cancellation will be credited to my loan account.
  H. Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without losing any of its rights under this Agreement, to the extent permitted by law.

By choosing any one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights are hereunder cumulative, not exclusive.

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral if it is personal property, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law.

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral securing this Agreement and taken into possession as provided above.

WAIVER. Unless law or this Agreement provide otherwise, I hereby waive presentment, notice and protest, and all other demands and notices in connection with the delivery, acceptance, performance, default, or endorsement of this Agreement and all suretyship defenses generally to the extent permitted by applicable law.

NOTICES. If required by law, Lender will provide me with notices under this Agreement, if mailed, to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance.

DELAY IN ENFORCEMENT. Lender may delay enforcing any of its rights under this Agreement without losing them.

SAVINGS CLAUSE. All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law. If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then: (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the Principal, as defined below, that I owe under this Agreement or making a direct payment to me. To the extent permitted by law, my acceptance of any such refund shall constitute a waiver of any right of action I might have arising out of such overcharge.

---

The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

I/We acknowledge that my/our monthly scheduled payments under my/our Agreement with Lender do not include payments for property taxes (or special assessments), or premiums for insurance covering the property. There are no escrow or impound accounts under my/our Agreement. Taxes and insurance costs can be substantial.

I/We agree to make required payment(s) to the appropriate taxing authority and/or insurance provider as they are due.

---

SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION      Initials: _OM_ _WP_

INTEREST BEARING LOAN. I agree to pay Principal, plus interest ("finance charges") on the daily unpaid Principal balance computed at the Contract Rate, in the amounts and on or before the dates set forth in the Payment Schedule in the Truth in Lending Disclosures on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. If the "Adjustable Rate Loan" box is checked above, the Contract Rate and the monthly payment amounts may change as set forth therein. If I have not purchased credit insurance or have purchased single premium credit insurance, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) interest; and (c) unpaid Principal. If I have purchased credit insurance that is billed on a monthly basis, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) any past due credit insurance premiums billed on a monthly basis; (c) any past due loan payment(s); (d) currently due credit insurance premiums that are billed on a monthly basis; and (e) currently due loan payment. When applying payments to past and currently due loan payments, monies will be applied first to accrued interest with the remainder, if any, being applied to unpaid Principal. Because interest on my loan is earned daily, early payments will decrease the amount I owe, and late payments will increase that amount. The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by Lender. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the Contract Rate, until paid in full.

PRINCIPAL. Principal is the total of the Amount Financed, plus any Prepaid Finance Charges that I have financed.

☐ BALLOON PAYMENT. If checked, my last scheduled payment is larger than my regular scheduled payments ("Balloon Payment"). I agree that, unless Lender has agreed to refinance my Balloon Payment, I must pay the full amount of my Balloon Payment from my own resources or by refinancing my loan with another lender on or before the due date of my final scheduled payment.

NOTICE: I am hereby notified that, if any scheduled payment of my loan is more than twice as large as the average of all other regularly scheduled payments, I have the right to refinance the amount of that payment at the time it is due at the Lender's prevailing rates for such type of transaction if I meet Lender's normal credit standards and if Lender, at the time, is in the business of making such transactions. This right to refinance does not apply to the extent that my payment schedule is adjusted to my seasonal or irregular income. This right to refinance also does not apply if: (a) the scheduled payments on my loan are for interest only, and (b) the scheduled interest only payments are sufficient to pay all the interest due to the date of each scheduled payment.

PREPAYMENT REFUND. I may prepay all or any part of my loan at any time. The Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, to the extent permitted by applicable law. If the earned finance charge is less, I agree to pay a minimum finance charge of $25.00.

PREPAYMENT PENALTY.

☒ If checked, there will be no prepayment penalty.

☐ If checked, this loan is secured by a Deed of Trust, and Lender may charge and I agree to pay a prepayment penalty equal to _____%, computed on the original Principal at any time within the first ___ months after the Date of Agreement. There will be no prepayment penalty if: (a) this loan is refinanced or consolidated by Lender or its affiliate; (b) this loan is prepaid with insurance proceeds; (c) this account is paid in full as a result of the sale of the real estate that secures the loan; (d) this loan is prepaid as a result of lawsuit, foreclosure, acceleration; (e) Lender disapproves a request for assumption and exercises its rights under a due on sale clause, and imposition of the prepayment penalty is prohibited by applicable law; or (f) this loan is prepaid more than ___ months after the Date of Agreement.

LATE CHARGE. I agree to pay any late charge disclosed in the Truth in Lending Disclosures herein.

DISHONORED CHECK CHARGE. If my check or other instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of $25.00.

DEFAULT COSTS. In the event of default, I agree to pay Lender's: (a) reasonable attorney's fees not to exceed 15% of the unpaid debt and (b) costs to realize on any security interest, each if and to the extent permitted by applicable law.

## NOTICE OF DAILY INTEREST COMPUTATION REQUIRED BY COLORADO LAW

THE DOLLAR AMOUNT OF THE FINANCE CHARGE DISCLOSED TO YOU FOR THIS CREDIT TRANSACTION IS BASED UPON YOUR PAYMENTS BEING RECEIVED BY THE CREDITOR ON THE DATE PAYMENTS ARE DUE. IF YOUR PAYMENTS ARE RECEIVED AFTER THE DUE DATE, EVEN IF RECEIVED BEFORE THE DATE A LATE FEE APPLIES, YOU MAY OWE ADDITIONAL AND SUBSTANTIAL MONEY AT THE END OF THE CREDIT TRANSACTION AND THERE MAY BE LITTLE OR NO REDUCTION OF PRINCIPAL. THIS IS DUE TO THE ACCRUAL OF DAILY INTEREST UNTIL A PAYMENT IS RECEIVED.

GOVERNING LAW. The laws of the State of Colorado shall govern this Agreement, except as preempted by federal law.

**PLEASE SEE IMPORTANT INFORMATION ON REVERSE**

**ENTIRE AGREEMENT.** This Agreement, which includes the Insurance Disclosure Summary, if one was provided to you, contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

IF I DEFAULT AND THIS LOAN IS SECURED BY A DEED OF TRUST ON MY HOME, I MAY LOSE MY HOME.

BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.

UNARBT (8-12-01)

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of this Agreement, the Truth in Lending Insurance Disclosures, the Privacy Notice, the Personal Property Appraisal Form (if applicable), and two copies of a Notice of Right to Cancel (if applicable) and agree to be bound thereby.

x _[signature]_  
Witness

x _[signature]_  
Witness

x _Dena L. McGow_ L.S.  
Borrower   DENA L MCGOW

x _Wayne Paulsen_ L.S.  
Co-Borrower WAYNE PAULSEN

x _____ L.S.  
Co-Maker  
Print Name: _____

x _____ L.S.  
Co-Maker  
Print Name: _____



```
  R2103633               CLASS         10/23/12  8:27  Score #  258
File  Edit  Shortcut  Help
```

- Daily Activities
- Work Applications
- Book or Retract
- Check Writing
- Servicing
- Solicitation
- Collections
- Reports
- Queries
- Purchases
- Other Systems
- Inquiries
- Miscellaneous
- Escrow
- CQS

Tabs: Init Financials | Curr Financials | Fees/Charges | Ins Financials | Account Review | Notes Review

Tabs: Collection/Solicitation | **Tran History** | Demographics | Debts | Assets | Ins on Coll | ARM Details | Escrow

**Critical Data**

```
    6411  F  LNS  DD 15  MCGOW,DENA L,,WAYNE         Payment    448.05
DOL 11/17/07       Pd To 07/12    Alert  3,BK13      Balance  16,720.82
Note CASE # 11-39848 DO NOT CALL HER ONLY CALL HIM   Pl Part     92.50
```

**Regular Transaction History**

| Tot Pmt | Int/Chgs | Prin | Balance | T Date | A | PD To | Comments |
|---|---|---|---|---|---|---|---|
| 500.00 V#2500000 | 228.91 | 271.09 | 17999.51 | F01/24/2C02 | | CADJ | :52.75 |
| 500.00 V#2500000 | 186.67 | 313.33 | 17686.18 | F02/22/2C03 | | CADJ | :104.70 |
| 400.00 V#1900000 | 202.40 C#9NFF468412 | 197.60 | 17488.58 | F03/25/2C04 | | CADJ DD 03/26/2 | :56.65 |
| 500.00 V#2500000 | 143.85 | 356.15 | 17132.43 | F04/17/2C05 | | CADJ | :108.60 |
| 450.00 V#2500000 | 220.56 | 229.44 | 16902.99 | F05/23/2C06 | | CADJ | :110.55 |
| 430.00 V#2500000 | 247.83 | 182.17 | 16720.82 | F07/03/2C07 | | CADJ | :92.50 |

Buttons: Maximize | Add Account to Query | View Escrow Account | View Payees | OK | Back | Exit

**DO NOT ACCEPT WITHOUT VERIFYING EAGLE WATERMARK IN PAPER**

STATE OF COLORADO
CERTIFICATE OF TITLE
***MOTOR VEHICLE***

DR 2001 (08/31/06)

| Field | Value |
|---|---|
| VIN | 1GBLP37N6S3329027 |
| YEAR | 1996 |
| MAKE | STW |
| MODEL | |
| BODY | MT |
| TITLE NUMBER | 12T207362 |
| ODOMETER | 30433  A |

ODOMETER LEGEND:
A - Actual Mileage
E - Exceeds mechanical limits
N - Not actual mileage WARNING ODOMETER DISCREPANCY

MAIL TO:
AMERICAN GENERAL FIN SERV
5078 W 92ND AVE
WESTMINSTER, CO 80031-6302

CWT/CAP SIZE: CWT 133
PREVIOUS TITLE: 12T193599
FUEL: GAS
DATE PURCHASED: 02/10/2007
DATE ACCEPTED: 12/17/2007
DATE ISSUED: 12/27/2007

OWNER:
MCGOW DENA L
PAULSEN WAYNE

FIRST LIENHOLDER:
AMERICAN GENERAL FIN SERV
5078 W 92ND AVE
WESTMINSTER, CO 80031-0000
AMOUNT OF LIEN: 4941.58
LIEN EXTENDED TO COUNTY: ADAMS
FILE NUMBER: 70015276
DATE RCD: 12/05/2007
MATURITY DATE: 04/01/2016

SECOND LIENHOLDER:
THIRD LIENHOLDER:
FOURTH LIENHOLDER:

THE APPLICANT HAS BEEN DULY REGISTERED IN THIS OFFICE AS THE OWNER OF THE MOTOR VEHICLE DESCRIBED SUBJECT TO LIENS AND ENCUMBRANCES IN THE ORDER SHOWN.

EXECUTIVE DIRECTOR, COLORADO DEPARTMENT OF REVENUE
ROXY HUBER

DATE DUPLICATE ISSUED:

H3868800
REV. 10/9/06

KEEP IN SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

**VOID IF ALTERED**

**ODOMETER CERTIFICATION** - Federal and state laws require that you state the mileage in connection with transfer of ownership. Failure to complete or providing a false statement may result in fines or imprisonment.
The seller(s) certifies, under penalty of perjury in the second degree, that the seller(s) signature(s) releases and transfers interest in the vehicle and the odometer reading and declaration are true and correct to the best of their knowledge.

**NOTICE: ANY ALTERATION OR ERASURE MAY VOID THE ASSIGNMENT AND ALL ASSIGNMENTS THAT FOLLOW**

ASSIGNMENT BY OWNER(S)

| Odometer Reading | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name |
| No Tenths | | Buyer's Signature Acknowledges Odometer Reading |
| Seller's Hand Printed Name(s) | | Buyer's Hand Printed Name |
| Seller's Signature | | |
| Seller's Hand Printed Name(s) | | Buyer's Hand Printed Name |
| Seller's Signature | | |
| Seller's Hand Printed Name(s) | | Buyer's Hand Printed Name |
| Seller's Signature | | |
| Seller's Hand Printed Name(s) | Date of Sale | Buyer's Physical Address |
| | Purchase Price | Buyer's City, State, ZIP |
| Seller's Signature | | |

The following reassignments may only be used by licensed dealers.

1st DEALER REASSIGNMENT

| Odometer Reading | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| No Tenths | | Buyer's Signature Acknowledges Odometer Reading |
| Selling Dealer Name | License Number | |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

2nd DEALER REASSIGNMENT

| Odometer Reading | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| No Tenths | | Buyer's Signature Acknowledges Odometer Reading |
| Selling Dealer Name | License Number | |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

3rd DEALER REASSIGNMENT

| Odometer Reading | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| No Tenths | | Buyer's Signature Acknowledges Odometer Reading |
| Selling Dealer Name | License Number | |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

4th DEALER REASSIGNMENT

| Odometer Reading | ☐ Actual Mileage ☐ Mileage in excess of Mechanical Limits ☐ Not Actual - Warning: Odometer Discrepancy | Buyer's Hand Printed Name(s) |
| No Tenths | | Buyer's Signature Acknowledges Odometer Reading |
| Selling Dealer Name | License Number | |
| Agent's Hand Printed Name | Date of Sale | Buyer's Hand Printed Name(s) |
| Agent's Signature | Purchase Price | Buyer's Hand Printed Name |
| Auction Name (When Applicable) | Auction Number | Buyer's Physical Address, City, State, ZIP |

**NO ADDITIONAL REASSIGNMENTS PERMITTED** - Last Assignee must obtain title in their name(s)

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:  
Bankruptcy No. 11-39848-MER  
Chapter 13

DENA LEE MCGOW  
Debtors,

SPRINGLEAF FINANCIAL SERVICES, INC.,  
Movant,

DENA LEE MCGOW,  
WAYNE PAULSEN, a Non-Bankruptcy Co-Debtor, and  
Sally Zeman,  
the Chapter 13 Trustee,  
Respondents.

## NOTICE OF HEARING OR PRELIMINARY HEARING OR PRELIMINARY HEARING FOR MOTION FOR RELIEF FROM AUTOMATIC STAY

### OBJECTION DEADLINE: NOVEMBER 14, 2012.

YOU ARE HEREBY NOTIFIED that a Motion for Relief from Automatic Stay, has been filed with this Court.

A HEARING ON THE MOTION HAS BEEN SET FOR **November 21, 2012** at **9:30 AM**, in Courtroom C-502, Byron G. Rogers Courthouse, 1929 Stout Street, Denver, CO 80202. The hearing will be conducted in accordance with the provisions of L.B.R. 4001-1.

IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this court a WRITTEN OBJECTION to the Motion on or before the objection deadline stated above and serve a copy upon Movant's attorney, whose address is listed below.

IF YOU FILE AN OBJECTION, you are REQUIRED to comply with L.B.R. 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits and (2) attendance at the above-scheduled hearing in person or through counsel, if represented.

**IF YOU FAIL TO FILE AN OBJECTION**, and the scheduled hearing will be **VACATED**, an order granting the relief requested may be granted without further notice to you.

Dated: October 23, 2012

HELLERSTEIN AND SHORE, P.C.

David A. Shore #19973  
Attorneys for Movant  
5347 S. Valentia Way, Suite 100  
Greenwood Village, CO 80111  
(303) 991-3543  
(303) 573-1271 (facsimile)

File No. 7501.045

In re:
DENA LEE MCGOW
Case No. 11-39848-MER

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on __October 24, 2012__ the foregoing **NOTICE OF HEARING OR PRELIMINARY HEARING** with a copy of the **MOTION FOR RELIEF FROM AUTOMATIC STAY** was placed in the United States mail, first class postage prepaid, to the following:

Dena Lee McGow
8624 Willow Street
Commerce City, CO 80022

Wayne Paulsen
8624 Willow Street
Commerce City, CO 80022

Christopher German
9035 Wadsworth Parkway, Suite 2275
Westminster, CO 80021

*Trustee*
Sally Zeman
Chapter 13 Trustee
PO Box 1169
Denver, CO 80201

U.S. Trustee
999 18th Street
Suite 1551
Denver, CO 80202

Jane M. Roberson
9035 Wadsworth Parkway, Suite 2275
Westminster, CO 80021

Jeanne Melberg
9035 Wadsworth Parkway, Suite 2275
Westminster, CO 80021

_____
Kandice L. Torno

File No. 7501.045